**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-244 (CKK)** |
| **v.** | : | |
| | : | |
| **ANTHONY ALFRED GRIFFITH, SR.,** | : | |
| | : | |
| **Defendant.** | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS TWO AND THREE

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the Motion to Dismiss Counts Two and Three of the Indictment (hereinafter, the "Motion" or "Mot.") filed by defendant Anthony Alfred Griffith, Sr. (hereinafter, "Griffith" and the "defendant").  Dkt. 88.  Count Two of the Indictment charges Griffith with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1), and Count Three charges Griffith with disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2).  Dkt. 12.

In his Motion, Griffith claims that Counts Two and Three, charging him unlawfully entering and remaining in a restricted building or grounds and disorderly conduct with a restricted building or grounds, must also be dismissed because the Capitol Police cannot designate a restricted area under the statute.  Griffith also insists that because the United States Secret Service alone can designate a restricted area on the statute, the charges are unconstitutionally vague as applied to him.   Finally, Griffith argues that application of the statute to him violates the Constitutional prohibition on *ex post facto* laws and in any event contravenes the rule of lenity.

None of these arguments is availing, and all have been previously considered and rejected by this Court or other judges in this District.  *See, e.g.*, *United States v. Christopher Grider*, 2022

WL 3016775, at *7 (D.D.C. July 29, 2022); *United States v. Griffin*, 549 F.Supp.3d 49, 54 (D.D.C. 2021); *United States v. Sean Michael McHugh*, 583 F.Supp.3d 1 (D.D.C. 2022); *United States v. Mostofsky*, 579 F.Supp.3d 9, 28 (D.D.C. 2022); *United States v. Egtvedt*, 21-177, Dkt. 93 at 13 (D.D.C. Nov. 4, 2022); *United States v. Sheppard*, 2022 WL 17978837 at *4 (D.D.C. Dec. 28, 2022); *United States v. Sean Michael McHugh*, 583 F.Supp.3d 1 (D.D.C. 2022) (JDB) (*McHugh I*).  Defendant's Motion should be denied in its entirety.

## FACTUAL BACKGROUND

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol at approximately 1:00 p.m. to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020.[1]  The U.S. Capitol is secured 24 hours a day by U.S. Capitol Police.  Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building.  Only authorized people with appropriate identification were allowed access inside the U.S. Capitol; on January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

As the proceedings continued in both the House and the Senate, and with then-Vice President Mike Pence present and presiding over the Senate a large crowd gathered outside the U.S. Capitol.  U.S. Capitol Police were present and attempted to keep the crowd that had gathered outside away from the Capitol building and the proceedings underway inside.  However, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged

---

[1] *See generally* Statement of Facts in Support of Complaint, Dkt. 1-1 ("Aff.") and the Indictment (Dkt. 12.).  "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underly the [] Indictment, as the indictment itself contains few, if any, details about [Defendant's] alleged conduct."  *Grider*, 2022 WL 3016775, at *8 n. 2 (quoting and citing *McHugh*, 583 F.Supp.3d at 8 n.2).

and assisted those acts. Soon thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Mike Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

On January 15, 2021, Griffith was interviewed at his home in Oklahoma by FBI agents. He admitted that he traveled to Washington, D.C., on January 6, 2021.  He explained that while there, he went up a set of stairs to an entrance to the U.S. Capitol and walked inside the building.  He proceeded down a hallway, entered an office, and interacted with individuals there.  He subsequently re-traced his steps and exited the building, only to re-enter the U.S. Capitol a short time later.  On that occasion, he walked through hallways and took photographs while inside the building.  Investigators reviewed additional photographs and videos from inside the U.S. Capitol Building on January 6, 2021, and located additional images of the defendant inside of the building.

## PROCEDURAL HISTORY

On March 24, 2021, the grand jury returned a five-count indictment charging Griffith and co-defendant Jerry Ryals ("Ryals")[2] with one count of entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1) (Count Two); one count of disorderly and disruptive conduct in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2)

---

[2] In that same Indictment, co-defendant Ryals was additionally charged with one count of obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. § 1512(c)(2) and 2 (Count One).  Dkt. 12 at 1.  On May 6, 2022, pleaded guilty to a criminal Information charging him with Civil Disorder, in violation of 18 U.S.C. § 231(a)(3). Minute Entry dated May 6, 2022; Dkt. 61 at 1. On October 18, 2022, this Court sentenced Ryals to 9 months of incarceration and three years of supervised release; the Government dismissed the five counts of the Indictment. Minute Entry dated October 18, 2022.

(Count Three); one count of disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D) (Count Four); and one count of parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G) (Count Five).  Dkt. 12.  On November 28, 2022, Griffith filed this motion to dismiss. Dkt. 88.

## **LEGAL STANDARD**

An indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018).  "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)).  And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976).

Rule 12 permits a party to raise in a pretrial motion "any defense, objection, or request that the court can determine *without a trial on the merits*."  Fed. R. Crim. P. 12(b)(1) (emphasis added). It follows that Rule 12 "does not explicitly authorize the pretrial dismissal of an indictment on sufficiency-of-the-evidence grounds" unless the government "has made a *full* proffer of evidence" or the parties have agreed to a "stipulated record," *United States v. Yakou*, 428 F.3d 241, 246-47 (D.C. Cir. 2005) (emphasis added)—neither of which has occurred here.

Indeed, "[i]f contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition

before trial." *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (Gorsuch, J.). Criminal cases have no mechanism equivalent to the civil rule for summary judgment. *United States v. Bailey*, 444 U.S. 394, 413, n.9 (1980) (motions for summary judgment are creatures of civil, not criminal trials); *Yakou*, 428 F.2d at 246-47 ("There is no federal criminal procedural mechanism that resembles a motion for summary judgment in the civil context"); *United States v. Oseguera Gonzalez*, No. 20-cr-40-BAH at *5, 2020 WL 6342940 (D.D.C. Oct. 29, 2020) (collecting cases explaining that there is no summary judgment procedure in criminal cases or one that permits pretrial determination of the sufficiency of the evidence). Accordingly, dismissal of a charge does not depend on forecasts of what the government can prove. Instead, a criminal defendant may move for dismissal based on a defect in the indictment, such as a failure to state an offense. *United States v. Knowles*, 197 F. Supp. 3d 143, 148 (D.D.C. 2016). Whether an indictment fails to state an offense because an essential element is absent calls for a legal determination.

Thus, when ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the face of the indictment and more specifically, the language used to charge the crimes. *United States v. Bingert*, 21-cr-91 (RCL), 2022 WL 1659163 at *3 (D.D.C. May 25, 2022) (a motion to dismiss challenges the adequacy of an indictment on its face and the relevant inquiry is whether its allegations permit a jury to find that the crimes charged were committed).

## ARGUMENT

Griffith seeks dismissal of Counts Two and Three, which allege violations of 18 U.S.C. § 1752(a)(1) and (a)(2), respectively. His various arguments are all without merit.

**I.     AS ALL THE COURTS TO ADDRESS THE ISSUE HAVE HELD, THE CAPITOL BUILDING AND GROUNDS CAN BE RESTRICTED UNDER 18 U.S.C. § 1752 BY THE UNITED STATES CAPITOL POLICE AND NOT ONLY THE SECRET SERVICE.**

Section 1752(c)(1) provides three alternate definitions for the term "restricted buildings and grounds."

(c) In this section—

(1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area--

(A)     of the White House or its grounds, or the Vice President's official residence or its grounds;

(B)     of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting; or

(C)     of a building or grounds so restricted in conjunction with an event designated as a special event of national significance; and

(2) the term "other person protected by the Secret Service" means any person whom the United States Secret Service is authorized to protect under section 3056 of this title or by Presidential memorandum, when such person has not declined such protection.

18 U.S.C. § 1752(c).

The definition that applies in this case is § 1752(c)(1)(B), "any posted, cordoned off, or otherwise restricted area ... of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." "Person[s] protected by the Secret Service" include the Vice President and the Vice President-elect. *See* § 1752(c)(2); 18 U.S.C. § 3056(a)(1)

("Under the direction of the Secretary of Homeland Security, the United States Secret Service is authorized to protect the … the Vice President").

In relevant part, Griffith is charged with:

- "knowingly enter[ing] and remain[ing] in a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, without lawful authority to do so," § 1752(a)(1) (Count Two); and

- "knowingly, and with intent to impede or disrupt the orderly conduct of Government business and official functions, engage in disorderly and disruptive conduct in and within such proximity to, a restricted building and grounds, that is, any posted, cordoned-off, and otherwise restricted area within the United States Capitol and its grounds, where the Vice President and Vice President-elect were temporarily visiting, when and so that such conduct did in fact impede and disrupt the orderly conduct of Government business and official functions," § 1752(a)(2) (Count Three).

Dkt 12 at 2.

Griffith contends that "[s]tatutory text, legislative history, and common sense all point to the conclusion that the agency that restricts such areas is the one that guards them, i.e., the USSS." Mot. at 2. The defendant is mistaken, as this Court and numerous of judges in this District have consistently (and repeatedly) found.

The text of Section 1752 "is not complex," *United States v. Griffin*, 549 F.Supp.3d 49, 54 (D.D.C. 2021). Like the defendant in *Griffin*, Griffith "contends that the Secret Service must 'establish' the restricted area under § 1752(c)(1)" "[b]ut that requirement is not in the text." *Id*. at 54-55. "Indeed, the only reference in the statute to the Secret Service is to its protectees. Section 1752 says nothing about who must do the restricting." *Id*. at 55. This Court has already rejected the same argument, noting that "nothing in the statutory text requires 'the Secret Service to be the entity to restrict or cordon off a particular area.'" *United States v. Christopher Grider*, 2022 WL

3016775 *7 (D.D.C. July 29, 2022) (citing and quoting *United States v. Mostofsky*, 579 F.Supp.3d 9, 28 (D.D.C. 2022)).  Indeed, "Congress's failure to specify how an area becomes 'restricted' just means that the statute does not require any particular method for restricting a building or grounds." *United States v. McHugh*, 2022 WL 296304, at *18.  "[T]he statute is unambiguous, and it gives the Secret Service no special role in delineating restricted areas."  *United States v. Egtvedt*, 21-177, Dkt. 93 at 13 (D.D.C. Nov. 4, 2022).  Other judges of this court who have addressed this issue have come to the same conclusion.[3]

Griffith—like Grider, Egtvedt, and Griffin before him—relies on *United States v. Bursey*, 416 F.3d 301 (4th Cir. 2005), Mot. at 12-13, but that case offers him no support. There, the Fourth Circuit *affirmed* a § 1752 conviction for entering an airport hangar that was restricted by the Secret Service ahead of a rally involving the President. *Id*. at 309. On appeal, Bursey challenged the District Court's finding that he acted willfully. Rejecting that claim, the Fourth Circuit pointed to evidence that Bursey must have known he was violating the law by remaining in the restricted area, including evidence that "Bursey understood the area to have been restricted by the Secret Service, and thus a federally restricted zone." *Id*.  From this, Griffith mistakenly concludes that since the Secret Service restricted the airport hangar in that case and because the airport hangar was a restricted area under § 1752, *only* the Secret Service can restrict areas for purposes of § 1752.

---

[3] *See United States v. Sheppard*, 2022 WL 17978837 at *4 (D.D.C. Dec. 28, 2022) ("The plain language of the statute says nothing about who must do the restricting . . . and Sheppard's arguments as to the purpose, legislative history, and precedent do not undermine the plain language of the statute.") (internal quotation and citation omitted): *United States v. Andries*, 2022 WL 768684, at *14; *Bozell*, 2022 WL 474144, at *8; *McHugh*, 2022 WL 296304, at *18; *Nordean*, 2021 WL 6134595, at *18; *Mostofsky*, 2021 WL 6049891, at *13; Omnibus Order, *United States v. Caldwell*, Crim. No. 21-28 (APM) (D.D.C. Sept. 14, 2021) [Dkt. No. 415] at 4; *United States v. Puma*, 1:21-cr-0454 (PLF), 2022 WL 823079, at *14–16 (D.D.C. Mar. 19, 2022); *United States v. Bingert*, 1:21-cr-91(RCL), 2022 WL 1659163, at *14 (D.D.C. May 25, 2022).

But as Judge McFadden explained 18 months ago in rejecting the same logical fallacy, "the Fourth Circuit [in *Bursey*] had no reason to analyze [whether the Secret Service must impose the restrictions] because all parties agreed that the Secret Service secured the hangar. There is no holding—binding or persuasive—on this question." *Griffin*, 549 F. Supp. 3d. at 56.

Unable to overcome the statute's plain text, Grider invokes the legislative history of § 1752 to support his atextual argument. Mot. at 2-6. But even Grider's cherry-picked snippets from the Congressional Record say nothing about whether the Secret Service has *exclusive* authority to restrict areas for purposes of § 1752. Moreover, "the history of amendments to Section 1752 provides little information about who must restrict an area." *Puma*, 2022 WL 823079, at *14-16 (citing *Griffin*). Indeed, Judge McFadden explained why the statutory history tends to *undercut* his argument:

> From its enactment in 1970 until 2006, Section 1752 contained a provision that authorized the Treasury Department (of which, until 2003, the Secret Service was a component) to "designate by regulations the buildings and grounds which constitute the" protected residences or offices of Secret Service protectees and "prescribe regulations governing ingress or egress to ... posted, cordoned off, or otherwise restricted areas where" protectees were present. 18 U.S.C. § 1752(d) (1970)….
>
> By 2006 Congress rewrote the statute, in the process eliminating reference to the Treasury Department and to any "regulations" from any executive branch agency. 18 U.S.C. § 1752 (2006). More, the new statute criminalized merely entering or remaining in a restricted area; the old statute required further action, such as impeding government business, obstructing ingress or egress, or physical violence. *Compare* 18 U.S.C. § 1752(a)(1) (2006) *with* 18 U.S.C. § 1752(a) (1970). But Congress did not stop there. In 2012 it reconfigured the statute, adding the term "restricted buildings or grounds" and then defining it under subsection (c), as it appears today. 18 U.S.C. § 1752(a) (2012). Congress did not take that opportunity to clarify who can or must do the restricting, leaving it open-ended. But Congress did lower the *mens rea* requirement, striking the requirement that a defendant act "willfully."

*Griffin*, 549 F.Supp.3d at 55-562021 (footnote omitted). "At the very least, the amendments to Section 1752 have served to increasingly, if only modestly, expand the scope of the statute." *Puma*,

2022 WL 823079, at *14-16. In sum, the legislative history "provides no support whatsoever for the notion that there is an extratextual requirement that the Secret Service, rather than some other federal authority, must restrict the area." *Id.* at 16.

In short, the defendant offers nothing new to counter the reasoning in *Griffin* and the numerous cases decided by other judges of this Court and this Court's prior decision in *Grider*.

## II.      18 U.S.C. 1752 IS NOT UNCONSTITUTIONALLY VAGUE

Griffin next claims that § 1752 as applied to his conduct is unconstitutionally vague. Mot. at 14-17. That is so, he claims, "because, prior to January 6, it had never prosecuted a violation of that statute with the allegation that the accused entered an area restricted by some government agency other than the USSS." *Id*. at 17. He claims that charging participants in the January 6 riots under § 1752 "raises questions of discriminatory law enforcement." *Id*. at 17.

Griffin's argument misconstrues the vagueness doctrine. The challenger must overcome the "strong presumptive validity that attaches to an Act of Congress," which has led the Supreme Court "to hold many times that statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language," *United States v. Nat'l Dairy Products Corp*., 372 U.S. 29, 32 (1963). Nor is a statute impermissibly vague because a reasonable jurist might disagree on where to draw the line between lawful and unlawful conduct in particular circumstances, *Skilling v. United States*, 561 U.S. 358, 403 (2010). Rather, a statute is vague only if it requires proof of an "incriminating fact" that is so indeterminate as to invite arbitrary and "wholly subjective" application. *United States v. Williams*, 553 U.S. 285, 306 (2008) The "touchstone" of the vagueness analysis "is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *United States v. Lanier*, 520 U.S. 259, 267 (1997).

A proper vagueness challenge, then, *must* turn on the precise wording of the challenged statute and explain why the statutory text fails to give a person of reasonable intelligence adequate notice that their charged conduct violated the statute. "The vagueness determination 'must be made on the basis of the statute itself and other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectation of particular defendants. *Grider*, 2022 WL 3016775 at *7 (citing and quoting *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964). *See also City of Chicago v. Morales*, 527 U.S. 41, 56 (1999) (the definition of "loitering" in the challenged ordinance as "to remain in any one place with no apparent purpose" was unconstitutionally vague); *United States v. Chhun*, 744 F.3d 1110, 1117 (9th Cir. 2014) ("Chhun's void for vagueness argument fails because, as discussed above, the statute's text is clear and unambiguous. A reasonable person would have no difficulty recognizing what conduct § 956(a) prohibits."). "Simply put, there is no statutory language susceptible to multiple meanings here, and again, [the defendant] identifies none. Indeed, [the defendant] identifies *no* authority anyway that has concluded that a 'restricted area' for the purposes of section 1752 can only be designated by the Secret Service. Accordingly, [the defendant's] vagueness challenge fails." *Grider*, 2022 WL 3016775 at *7.

The defendant further contends that language in 18 U.S.C. § 1752(a)(2), namely, "or within such proximity to," is "an unconstitutionally vague boundary standard as applied to Griffith." Mot. 18. This argument also fails, as the same argument failed in *Egtvedt*, 21-177, Dkt. 93 at 13 n.2 ("Egtvedt suggests that 'proximity' is an unconstitutionally vague standard. But as the government points out, Count Six charges Egtvedt with disorderly conduct in a restricted area.") and in *Griffin*, 549 F. Supp. 3d 49, 57 (D.D.C. 2021) ("More, the statute does not invite arbitrary enforcement by criminalizing common activities or giving law enforcement undue discretion; as applied here, the

Government alleges Griffin breached clearly posted security barriers manned by uniformed federal officers."). Griffith, like Egtvedt and Griffin, is not alleged to have engaged in unlawful disruption because he was *in proximity* to the Capitol building, but rather because he was squarely within the restricted area and entered into the Capitol building itself twice on January 6, 2021. Indeed, the defendant himself acknowledges in his Motion that he entered the Capitol. Mot. at 20 ("The 'disorderly and disruptive conduct' of which he is accused consists of peacefully protesting the 2020 election results and praying *inside the Capitol*.") (emphasis added).

Griffith declines to mention that, in addition to this Court, Judges Friedman, Bates, Kelly, McFadden, and Cooper have all rejected vagueness challenges to 18 U.S.C. 1752(a)(1) and (a)(2). *Grider*, 2022 WL 3016775, at *7; *Puma*, 2022 WL 823079, at *3 ("This Court concludes that … 18 U.S.C. § 1752 [is] not unconstitutionally vague.") (Friedman, J.); *Bozell*, 2022 WL 474144, at *9 ("§ 1752 "is clear[,] gives fair notice of the conduct it punishes, and [does not] invite arbitrary enforcement."); *Nordean*, 2021 WL 6134595, at *19 (§ 1752(a)(1) and (a)(2) are "not unconstitutionally vague"); *Griffin*, 549 F. Supp. 3d at 57 ("This law is no trap awaiting the unwary."); *United States v. Caputo*, 201 F. Supp. 3d 65, 72 (D.D.C. 2016) ("18 U.S.C. § 1752(a)(1) is … not void for vagueness.") (Cooper, J.). Griffith ignores all of those decisions. Nor does he identify any decision from any district holding to the contrary.

### III.     THE RULE OF LENITY IS INAPPLICABLE HERE.

Griffith relatedly contends the rule of lenity requires dismissal of § 1752 counts. Mot. at 20-21. This claim also fails. The rule of lenity provides that, "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Cleveland v. United States*, 531 U.S. 12, 25 (2000) (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971)). Even in its most robust form, the rule of lenity only applies when, "after all legitimate tools of interpretation have been

exhausted, 'a reasonable doubt persists' regarding whether Congress has made the defendant's conduct a federal crime." *Moskal v. United States*, 498 U.S. 103, 108 (1990)); *accord Barber v. Thomas*, 560 U.S. 474, 488 (2010) ("[T]he rule of lenity only applies if, after considering text, structure, history, and purpose, there remains a 'grievous ambiguity or uncertainty in the statute,' such that the Court must simply 'guess as to what Congress intended.'") (cleaned up).

A criminal statute is ambiguous when, for instance, it "has two possible readings," one favorable to the defendant and the other unfavorable. *Abramski v. United States*, 573 U.S. 169, 203 (2014) (Scalia, J., dissenting); *accord United States v. Santos*, 553 U.S. 507, 512 (2008) (finding a statutory term ambiguous where two plausible readings of the term existed). Griffith ignores this textual point and instead focuses on irrelevancies. *See* Mot. at 20-21 (pointing to: "the lack of any references in § 1752 to agencies other than the USSS"; legislative history; the statutory mention of the Secret Service and its enforcement role; the absence of caselaw regarding § 1752 and the crimes on January 6; and the supposed "common sense notion that if the USSS patrols and guards the restricted areas in § 1752, it also sets them." Mot. at 21.

To take the last point first, the USCP has statutory authority to patrol and guard the United States Capitol Building and Grounds. *See* 2 U.S.C. § 1961(a). If Griffith's "common sense" logic is correct, the USCP also has authority to determine the meets and bounds of the restricted areas. As to his third point, that cases prior to January 6 did not apply § 1752 to a similar riot during which a mob of tens of thousands of persons stormed the Capitol in order to prevent the certification vote follows from the fact that nothing like the January 6 riot had previously happened.

Griffith's "rule of lenity" attacks on § 1752 all ignore the statutory text, which abjures any special role for the Secret Service for setting the restrictions. Judge McFadden made short work of a similar rule of lenity and "novel construction principle" challenge to § 1752 in *Griffin*:

> Neither applies. Lenity is "a sort of junior version of the vagueness doctrine." It comes into frame only when a court has exhausted all canons of statutory construction and is left with only a coin flip to resolve "grievous ambiguity."
>
> As the Court has explained, Section 1752 is capacious, not ambiguous. Griffin's ability to articulate a narrower construction of the statute does not trigger lenity.

*Griffin*, 549 F. Supp. 3d at 57 (cleaned up). Judges Bates and Boasberg reached the same conclusion. *Bozell*, 2022 WL 474144, at *9; *Mostofsky*, 2021 WL 6049891, at *13. This Court reached the same conclusion in *Grider*: "Similarly, because there is no 'grievous ambiguity or uncertainty in the statute,' Grider's brief invocation of the rule of lenity also fails." *Grider*, 2022 WL 3016775, at *7. No court has reached a contrary result. Again, Griffith mentions none of those decisions, much less explains why this Court should reject their conclusions or reasoning

## IV.    18 U.S.C. 1752 IS NOT AN EX POST FACTO LAW.

Griffith finally contends that charging him with violations of § 1752 violates the *Ex Post Facto Clause* "[b]ecause no court has ever construed Section 1752 to mean that agencies other than the USSS may set restricted areas under the statute" and so "such a construction would be novel and therefore the statute did not give Griffith fair warning of what it proscribed." Mot. 21-22. This Court has already rejected precisely this claim:

> Generally, to prevail on an ex post facto challenge, a defendant must show some break with precedent. . . . Here, Grider has identified no precedent adopting his reading. Indeed, it is Defendant's reading of these statutes that appears to be novel. As the Court has concluded above, neither section 231 nor section 1752 are, for present purposes, susceptible of more than one meaning. The fact that Grider "has allegedly violated a rarely charged statute," or that the Government has applied the

challenged provisions to conduct at the United States Capitol, "does not mean that the construction of the[se] statute[s] unfairly blindsided him."

*Grider*, 2022 WL 3016775, at *8 (citing and quoting *Griffin*, 549 F. Supp. 3d at 58). Other judges in this District have also rejected the same argument. *See Mostofsky*, 2021 WL 6049891, at *13; *Bozell*, 2022 WL 474114, at *9 ("Likewise, prosecuting Bozell under § 1752 does not unexpectedly broaden the statute).

In summary, all of Grider's challenges to the § 1752 counts are without merit.

## CONCLUSION

For the foregoing reasons, the government respectfully requests that Griffith's motion to dismiss be denied in its entirety.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     /s/ Craig Estes
        CRAIG ESTES
        Assistant United States Attorney
        United States Attorney's Office for the
        Massachusetts (detailed to USAO-DC)
        Massachusetts Bar No. 670370
        craig.estes@usdoj.gov
        (617) 748-3100


        /s/ Sonia Mittal
        SONIA MITTAL
        Assistant United States Attorney
        United States Attorney's Office for the
        District of Columbia
        Illinois Bar No. 6314706
        sonia.mittal@usdoj.gov
        (202) 821-9470