IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | CRIMINAL NO. 21-CR-244(CKK) |
| | : | |
| | : | |
| ANTHONY GRIFFITH. | : | |

**DEFENDANT'S RESPONSE TO GOVERNMENT'S OMNIBUS MOTION IN LIMINE**

The Defendant, by and through his attorneys Nicole Cubbage and Kira Anne West, respectfully requests that this Court allow the defendant to argue and admit certain evidence at trial free from the government's proposed limitations as requested in the omnibus motion in limine.

1. The Law

Pretrial motions in limine "are an important mechanism to effectuate th[e] goal" of "conduct[ing] a jury trial to the extent practicable so that inadmissible evidence is not suggested to the jury by any means." *United States v. Bikundi*, 2015 U.S. Dist. LEXIS 136768, at *9-10(D.D.C. Oct. 7, 2015) (citing Fed. R. Evid. 103(d)). In evaluating the admissibility of proffered evidence on a pretrial motion in limine the court must assess whether the evidence is relevant and, if so, whether it is admissible, pursuant to, inter alia, Federal Rules of Evidence 401 and 403. Id. "The burden is on the introducing party to establish relevancy" as well as admissibility. *Dowling v. United States*, 493 U.S. 342, 351 n. 3, 110 S. Ct. 668, 107 L. Ed. 2d 708 (1990). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence and (b) the fact is of consequence in determining the action" Fed. R. Evid. 401. Relevant evidence may be deemed inadmissible and subject to

1

exclusion on multiple grounds, including that its "probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "[U]nfair prejudice within [the Rule 403] context means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Ring*, 706F.3d 460, 472, 403 U.S. App. D.C. 410 (D.C. Cir. 2013) (quoting Fed. R. Evid. 403 advisory committee's notes).

The Rule 403 balancing question is whether the "reverberating clang" of the defendant's inflammatory statements at issue might "drown all weaker sounds" presented by the rest of the evidence. *Shepard v. United States,* 290 U.S. 96, 104 (1933) (Cardozo, J.).

"Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Fed. R. Evid. 404(a)(1). However, the Court may in certain circumstances admit "evidence of any other crime, wrong, or act," Fed. R. Evid. 404(b)(1), for a purpose other than proving that on a particular occasion the person acted in accordance with a character trait, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Even where the Court determines that proffered evidence satisfies Rule 404(b)(2), the evidence is not admissible unless it also satisfies balancing under Rule 403. E.g., United States v. Bell, 795 F.3d 88, 100 n. 12 (D.C. Cir. 2015).

2. Argument

### A. Motion in limine 1 by Government to Limit Unnecessary Discussion of Security Related Topics

The government moves to preclude the admission of any evidence, through cross-examination or through the defense case-in-chief, or argument by counsel, regarding sensitive, security related topes.  Specifically they ask to preclude evidence of exact locations of CCTV cameras and discussion of U. S. Secret Service ("USSS") protocols.  Mr. Griffith does not intend to offer evidence or question officers about the exact locations of CCTV cameras that will be used as evidence.  However Mr. Griffith finds it relevant and necessary to question witnesses about the lack of cameras in offices located off the Senate fire door that Mr. Griffith is accused of entering.

Additionally, Mr. Griffith does not intend to question any witnesses on the USSS protocols for protecting the Vice President on January 6, 2021 specifically, however, he must be allowed to mount a meaningful defense to the Government's claims that the capitol grounds were restricted on January 6, 2021 at the behest of the USSS and in relation to the temporary visit by the Vice President.  Moreover, questioning USSS witnesses about these facts is relevant to how and when the USSS worked in conjunction with U.S. Capitol Police ("USCP") to establish an agreed upon restricted perimeter for that day and who ordered and oversaw this joint effort to maintain and restrict the Capitol Grounds before Pence's arrival, during the events of January 6, 2021, and after he was evacuated from the Capitol.

Showing protectees were present at a location and were being protected is, in the instant case, a necessary but an incomplete set of facts to establish that the Capitol and its grounds or any part of the Capitol or its grounds were "restricted" for purpose of § 1752(a). 18 U.S.C. § 1752(c)(1)(B) includes the following: (c) In this section— (1) the term "restricted buildings or grounds" means any posted, cordoned off, or otherwise restricted area—… (B) of a building or grounds where the President or other person protected by the Secret Service is or will be

3

temporarily visiting. (emphasis added).  Protectees may be at a location with no restricted areas as defined under 18 U.S.C. § 1752(c). The presence of Vice President Pence without a correlating restricted area under 18 U.S.C. § 1752(c) has no legal meaning in the instant case. The Government seeks to have an alleged restricted area that is relevant to Mr. Griffith under 18 U.S.C. § 1752(c). Restricted areas must be "posted, cordoned off, or otherwise restricted."  Mr. Griffith has argued in his motion to dismiss and reply (ECF 88 and 107) that the legal issue is what the postings, cordons or other restrictions were at the time and location of Mr. Griffith's alleged violations.  Thus, questioning USSS and USCP witnesses regarding the protocols for establishing and maintaining a restricted perimeter is essential to Mr. Griffith's defense.  Mr. Griffith had no role in maintaining such a perimeter or the demarcation of a restricted area under 18 U.S.C. § 1752(c). He had no role in removing any element of such perimeter or demarcation of a restricted area under 18 U.S.C. § 1752(c). He is not responsible for those who violated a perimeter earlier in the day. He is not responsible for those who removed elements of any alleged perimeter or restricted area. Finally, he is not alleged to have seen the demarcations creating a perimeter as it may have existed at an earlier time prior to his arrival at the Capitol.

     Mr. Griffith has questions of Secret Service witnesses and other potential Government witnesses related to every aspect of the statutory language and with regards to aspects that flow from other statutory language in the charges. All of those questions are relevant and there is no evidence such questions are prejudicial. The fundamental accusation under 18 U.S.C. § 1752(a)(1) is that Mr. Griffith knowingly entered or remained in a restricted area as defined under 18 U.S.C. § 1752(c). At a minimum, any testimony regarding the establishment of a restricted area creates the subject-matter of the restricted area for purposes this case.

In defense, Mr. Griffith may certainly argue that certain problems in planning and preparation and operation of the Secret Service and other enforcement officials in conjunction with the actions on January 6, 2021 were the reason for the disruption of Government business and official functions – not any conduct by Mr. Griffith. Questions could include why the actions and inactions of the Secret Service and the enforcement agencies were responsible for both the initial stop of the certification proceedings and any further delay. These questions could include prior security protocols and the "nature of" the Secret Service protections that day. Mr. Griffith could ask whether better coordination between the USSS at the rally earlier in the day and the other law enforcement agencies working at the Capitol and the surrounding areas might have avoided the situation altogether.  For example, Mr. Griffith may seek to ask why the initial breaches at the Capitol perimeter that occurred at approx. 12:54pm were not a sufficient reason to alert law enforcement already present in the area to block the streets leading to the Capitol. He may wish to inquire as to why law enforcement agencies, including the USSS, failed to issue warnings to the thousands of innocent rally attendees who were still at the Ellipse listening to President Trump's speech while the perimeter was breached.  He may inquire as to why, even after hearing of the breaches at the Capitol prior to 1pm, and the President's invitation to the thousands in the crowd to join him down at the Capitol thereafter, nothing was done to re-establish a perimeter so that the crowd could assemble on permitted First Amendment assembly areas rather than on what the government now calls "restricted" grounds.  Finally, Mr. Griffith may wish to inquire about the legal justification for a perimeter if there is no longer a USSS protectee in the building.  Mr. Griffith argues that the failure to do these things allowed thousands of rally attendees to walk unknowingly and unwittingly towards a civil disorder on

restricted grounds at the Capitol at which defendants are being held criminally liable for by merely being present.

> **B. Motion in Limine 2 by Government to Preclude the Defendant from Suggesting that His Speech or Conduct was Protected by the First Amendment.**

Mr. Griffith may seek to introduce some of his statements at trial but has not decided which statements, if any, will be used in his defense. Mr. Griffith respectfully asks the Court to reserve ruling on this issue and carry it with the testimony as it comes in at trial. Mr. Griffith believes that the Government's argument asking this Court to preclude any First Amendment defense is prohibited not only by the First Amendment itself, but also by the rules of Evidence. If the statement is reliable and relevant, it should be weighed by this Court like any other statement. Mr. Griffith does not intend to put forth a selective prosecution or entrapment defense. As this Court knows, new evidence is revealed each week as more trials go forward. For this reason, Mr. Griffith will not bring up "Agent Provocateurs" without first asking the Court and/or making a proffer of evidence.

> **C. Motion in Limine 3: Government's motion to preclude Defendant from Arguing or Commenting in a Manner that Encourages Jury Nullification, Whether During Voir Dire or During Trial**

Defendant Griffith is having a bench trial before this court so any argument regarding jury nullification is moot.  This motion in limine appears to have been left over from some other motion filed by government counsel as it has no applicability to this bench trial and references "defendants" when Mr. Griffith is the only defendant in this trial.   That said, Defendant Griffith is more than confident this Court can listen impartially to the evidence in this case and render a fair verdict.

Similarly, the Court need not entertain the government's motion to exclude statements regarding punishment or collateral consequences of conviction. There will be no jury in this case and the Court is well aware and capable of sitting as the fact finder without undue prejudice with regard to the possible hardships of prison or the potential effect of incarceration on the defendant or his family.

D. **Motion in Limine 4: Government motion to admit defendant's out of court statement as statements by a party opponent under Federal Rule of Evidence 801(d)(2)(A)**

Defendant notes that the statements of Mr. Griffith mostly pertain to his trip to DC. None of his statements pertain to a desire to interrupt the certification, carry out violence or participate in any organized attack on the Capitol. The government argues that Mr. Griffith's statements should be admitted against him as non hearsay under Rule 801(d)(2)(a) as statements by a party - opponent. Mr. Griffith argues that these statements should be viewed in their entirety and that he should be able to complete the record rather than have the government offer bits and pieces of his statements out of context. That is why the government's next motion in limine (**Motion in Limine 5**) to preclude the defendant from using his own out-of-court statements as inadmissible hearsay is patently prejudicial. The Government argues defendant's own out-of-court statements, if introduced by the defendant, are "self-serving hearsay" without the benefit of cross examination by the United States. *United States. Fernandez*, 839 F. 2d 639, 640 (9th Cir. 1987). However, what the government fails to understand is that any statement made to an agent of the United States, and memorialized by that agent, then becomes that agent's statement and he or she can be cross examined on the substance of that statement as well as the nature of the interview and the questions that were posed to illicit such responses by the defendant. Moreover, to the extent that the government seeks to introduce the audio recording of any custodial interview, Mr. Griffith should be allowed to play the complete portion of that interview or statement so as not to

mislead the Court as to the substance of such statement, the nature of the question that was asked and the context of the answers given. The Court in this case can consider the rule of completeness with regard to the government's attempt to use the defendant's statements against interest, realizing that showing the defendant's reasons for being at the Capitol provide context to the events he is charged with even if they tend to weaken the government's case and show the defendant in a positive light.

Any statements are admissible of a type that the D.C. Circuit in *United States v. Munchel*, 991 F.3d 1273, 1287 (D.C. Cir. 2021) has characterized as "rhetorical bravado" when measured against a defendant's lack of actual violence. And, the Supreme Court has characterized similar statements as "offhand remarks" of hostility protected by the First Amendment. *See Noto v. United States,* 367 U.S. 290, 297 (1961). Therefore, Mr. Griffith asks that the Court not make a blanket ruling but consider each statement and the context in which it is given or said.

**D. Government's Motion in Limine 6 – to Admit certain statutes and records**

Mr. Griffith believes the parties will enter into several stipulations regarding the Electoral College Certification and Vice President Pence's participation in that process. Therefore, Mr. Griffith anticipates that this motion in limine will no longer be needed.

Respectfully submitted,

By:      /s/
     Nicole Cubbage

     The Law Office of Nicole Cubbage

                                                  712 H St. NE, Unit# 570
                                                  Washington, DC 20002
                                                  703-209-4546
                                                  Cubbagelaw@gmail.com

By:          /s/
              Kira Anne West
              DC Bar No. 993523
              712  H Street N.E., Unit  509
              Washington, D.C.  20002
              Phone:   202-236-2042
              kiraannewest@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify on the 2nd day of February, 2023, a copy of same was delivered to the parties of record, by  ECF and email  pursuant to the Covid standing order and the  rules of the Clerk of Court.

                                                /S/
                                            Kira Anne West