UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ANTHONY ALFRED GRIFFITH, SR.,<br><br>Defendant. | Criminal Action No. 21-244-2 (CKK) |

**OMNIBUS MEMORANDUM OPINION**
(February 6, 2023)

This criminal case is one of approximately one thousand arising from the insurrection at the United States Capitol on January 6, 2021. For his actions at the Capitol on January 6, Defendant Anthony Alfred Griffith ("Defendant" or "Griffith") is charged by indictment with four misdemeanor counts. Before the Court is Defendant's [88] and [89] motions to dismiss the indictment, in part or in whole, and [90] Motion to Transfer Venue. Upon consideration of the briefing,[1] the relevant legal authorities, and the entire record, the Court shall **DENY** each Motion.

---

[1] The Court's consideration has focused on:

- The Government's Statement of Facts in Support of its Sealed Complaint, ECF No. 1-1 ("Aff."); and
- the Indictment, ECF No. 12;
- Defendant's Motion to Dismiss Counts Two and Three of the Indictment, ECF No. 88;
- Defendant's Motion to Dismiss 2-5 as Multiplicitous, ECF No. 89;
- Defendant's Motion to Transfer Venue, ECF No. 90;
- The Government's Opposition to Defendant's Motion to Dismiss Counts 2-5 as Multiplicitous, ECF No. 103;
- The Government's Opposition to Defendant's Motion to Transfer Venue, ECF No. 104;
- The Government's Opposition to Defendant's Motion to Dismissing Counts Two and Three, ECF No. 105; and
- Defendant's Reply to the Government's Response to Defendant's Motion to Dismiss Counts Two and Three of the Indictment, ECF No. 107.

In an exercise of its discretion, the Court has concluded that oral argument would not be helpful in the resolution of the Motions.

## I.   BACKGROUND

Defendant is charged by indictment with: (1) Entering and Remaining in a Restricted Building, in violation of 18 U.S.C. § 1752(a)(1); (2) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation 18 U.S.C. § 1752(a)(2); (3) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (4) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). Indictment, ECF No. 12.

### A. Certification of the 2020 Presidential Election and Capitol Riot

The Twelfth Amendment of the United States Constitution provides that, after the members of the Electoral College "meet in their respective states and vote by ballot for President and Vice-President," they "shall sign and certify [their votes], and transmit [them] sealed to the seat of government of the United States, directed to the President of the Senate." U.S. Const. amend. XII. The Vice President of the United States, as President of the Senate, must then, "in the presence of the Senate and House of Representatives, open all the certificates[,], and the votes shall then be counted." *Id.* To count the votes and "declar[e] the result" of the Electoral College, federal law mandates that "Congress shall be in session on the sixth day of January succeeding every meeting of the electors" and that "[t]he Senate and House of Representatives shall meet in the Hall of the House at the hour of 1 o'clock in the afternoon on that day." 3 U.S.C. §§ 15-16.

Pursuant to the Constitution and federal law, Congress convened in a joint session at 1:00 PM on January 6, 2021, to count the votes of the Electoral College and certify the results of the 2020 Presidential Election, which had taken place on November 3, 2020. *See* Compl., Stmt. of Facts ("SOF") at 1, ECF No. 1-1. With then-Vice President Michael R. Pence presiding, proceedings began and continued until 1:30 PM, when the United States House of Representatives

2

and the United States Senate adjourned to separate chambers within the Capitol to debate and consider an objection to the Electoral College vote from the State of Arizona. *Id.* Vice President Pence continued to preside in the Senate chamber. *Id.*

Shortly before noon, then-President Donald J. Trump took the stage at a rally of his supporters staged just south of the White House. *Trump v. Thompson*, 20 F.4th 10, 17 (D.C. Cir. 2021). Then-President Trump declared that the election was "rigged" and "stolen" and urged the crowd to "demand that Congress do the right thing and only count the electors who have been lawfully slated." *Id.* at 18 (cleaned up). During and after then-President Trump's speech, a mass of attendees marched on the Capitol. *See id.*

As they gathered outside the Capitol, the crowd faced temporary and permanent barricades and Capitol Police positioned to prevent unauthorized entry to the Capitol. Aff. ¶ 6. Shortly after 2:00 p.m., "crowd members forced entry into the Capitol building, including by breaking windows and assaulting Capitol Police officers, while others in the crowd encouraged and assisted those acts." *Id*. These violent acts caused members of the Senate and House of Representatives to evacuate the chambers of the Capitol and suspend the certification process of the presidential election results. *Id*. ¶ 7. The violent riot "desecrated [the Capitol], blood was shed, and several individuals lost their lives." *Thompson*, 20 F.4th at 19. All told, "[t]he events of January 6, 2021 marked the most significant assault on the Capitol since the War of 1812." *Id*. at 18-19 (footnote omitted).

As this Court has found as both a factual and legal matter, the Capitol building and grounds on January 6, 2021 were a "restricted area" within the meaning of 18 U.S.C. § 1752. *United States v. MacAndrew*, Crim. A. No. 21-730 (CKK), 2023 WL 196132, at *2 (D.D.C. Jan. 17, 2023); *United States v. Grider*, --- F. Supp. 3d ---, 2022 WL 17829149, at *12 (D.D.C. Dec. 21, 2022)

("*Grider II*"); *United States v. Grider*, --- F. Supp. 3d ---, 2022 WL 17829149, at *7 (D.D.C. July 29, 2022) ("*Grider I*"). In part, the Court concluded (after considering trial evidence) that it was a "restricted area" based on testimony by Secret Service and Capitol Police leadership, who were coordinating the designation of the area as "restricted." *Rivera*, at *7. Although it may be the case that other documents formally effected that designation, the Court implicitly credited, among other things, an "Order" by the Capitol Police Board, which restricted access to the West Front of the Capitol. *See* Ex. A (trial exhibit from *Rivera*). As a result, the Court further found in all of *MacAndrew*, *Grider*, and *Rivera* that the defendants remained in a "restricted area" well after the fall of the first police lines at approximately 1:15 PM.

### B. Events Specific to Defendant

Defendant is one nearly of one thousand individuals charged with federal crimes for his conduct on January 6th. According to the allegations in the Indictment and the Affidavit in Support of Criminal Complaint, ECF No. 1-1,[2] Defendant traveled from Oklahoma to the District of Columbia for then-President Trump's "Stop the Steal" rally. *See* Aff. at 4. After the rally, Griffith, with co-Defendant Jerry Ryals, made his way to the Capitol and entered the building with the crowd. *Id.* at 4-5. Griffith also took photos of armored police battling with insurrectionists on the West Front of the Capitol. *Id.* at 5 (figure 4).[3]

---

[2] "It is appropriate if not necessary to rely on other official documents for the specific factual allegations underlying the [] Indictment, as the indictment itself contains few, if any, details about [Defendant's] alleged conduct." *United States v. McHugh*, --- F Supp. 3d ---, 2022 WL 296304 at *2 n.2 (D.D.C. Feb. 1, 2022) (JDB); *accord United States v. Mostofsky*, Crim. Action No. 21-138, 2021 WL 6049891 at *1 (D.D.C. Dec. 21, 2021) (JEB).

[3] Defendant's motion to suppress those inculpatory statements remains pending. At the time of his arrest, Defendant made a number of inculpatory admissions to law enforcement confessing his conduct, although he maintains that he did not know it was unlawful for him to enter the Capitol. *See id.*; ECF No. 106-5 (recorded interview of Defendant conducted by FBI agents). The Court's analysis here does not rest in any substantial part on these alleged statements.

## II.     LEGAL STANDARD

Pursuant to Federal Rule of Criminal Procedure 12(b)(3), a criminal defendant may, before trial, move to dismiss a count of the indictment based on a "defect in the indictment." As relevant here, defects include "failure to state an offense." *Id.* "Failure to state an offense" may be due to a question of statutory interpretation or a constitutional issue. *See United States v. Stone*, 394 F. Supp. 3d 1, 8 (D.D.C. 2019). When considering a challenge to the indictment, "a district court is limited to reviewing the face of the indictment;" the Court must "presume the allegations [in the] indictment to be true." *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009) (internal quotation marks removed). "The operative question is whether [those] allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed." *United States v. Sanford Ltd.*, 859 F. Supp. 2d 102, 107 (D.D.C. 2012). Additionally, pursuant to Rule 12(b)(3)(B)(ii), a Defendant may, before trial, move to dismiss a charging instrument in whole or in part based on the instrument "charging the same offense in more than one count (multiplicity)."

## III.    DISCUSSION

Defendant's challenges to the Indictment are multitudinous. He challenges the reach of the 18 U.S.C. § 1752, in addition to insisting that the statute is void for vagueness. Defendant further that, were the Court to rule against him, doing so would effect an *ex post facto* law in violation of the Fifth Amendment. Next, Defendant argues that the charges in the Indictment are unconstitutionally multiplicative of each other. Finally, he asks the Court to transfer venue to the United States District Court for the Eastern District of Virginia or the United States District Court for the Eastern District of Oklahoma. All these challenges fail.

A. Section 1752

First, Defendant argues that the Indictment does not state a violation of 18 U.S.C. § 1752 because only the United States Secret Service can designate an area "restricted." This challenge has been exhaustively litigated in this jurisdiction, and every court to consider the argument has rejected it, including this Court. *Grider I*, 2022 WL 17829149, at *12; *see also United States v. Oliveras*, Crim. A. No. 21-738 (BAH), 2023 WL 196746, at *3 (D.D.C. Jan. 17, 2023) (collecting cases).

Next, Defendant argues that reading section 1752 to permit any law enforcement agency to designate an area "restricted" should render the law void for vagueness. The Court rejected this argument in *Grider I* as well. *Grider I*, 2022 WL 17829149, at *12; *see also Oliveras*, 2023 WL 196746, at *3 (again, collecting cases). The Court restates and incorporates the entirety of its analysis in *Grider I* herein. As explained in *Grider I*, vagueness challenges are difficult to mount because "statutes are not automatically invalidated as vague simply because difficulty is found in determining whether certain marginal offenses fall within their language." *United States v. Nat'l Dairy Prods. Corp.*, 372 U.S. 29, 32 (1963). A law is unconstitutionally vague when it "fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). This is a "'stringent standard.'" *Sandlin*, 2021 WL 5865006 at *10 (quoting *United States v. Harmon*, No. 19-cr-395 (BAH), 2021 WL 1518344 at *4 (D.D.C. Apr. 16, 2021)). The vagueness determination "must be made on the basis of the statute itself and other pertinent law, rather than on the basis of an ad hoc appraisal of the subjective expectations of particular defendants." *Bouie v. City of Columbia*, 378 U.S. 347, 355 n.5 (1964).

Simply put, there is no statutory language susceptible of multiple meanings here. The relevant provision means what it says: it is unlawful to knowingly enter or remain in "any posted, cordoned off, or otherwise restricted area of a building or grounds where the President or other person protected by the Secret Service is or will be temporarily visiting." 18 U.S.C. § 1752(a)(1), (c)(1)(B). As Chief Judge Beryl A. Howell recently explained, the legislative history clarifies that Congress intended that other law enforcement agencies could designate "restricted areas" by "remov[ing] the authority (and responsibility) of the Secretary of the Treasury, the USS, or anyone else to 'designate'" a restricted area when it amended the statute in 2006. *Oliveras*, 2023 WL 196746, at *1; *see also United States v. Griffin*, 549 F. Supp. 3d 49, 55-56 (D.D.C. 2021) (discussing statutory history).[4] "Congress chose to delineate the outer boundary of this statute not by who does the restricting but to who is being protected." *United States v. Puma*, 596 F. Supp. 3d 90, 109 (D.D.C. 2022) (PLF). As such, assuming the Capitol Police designated the Capitol Grounds restricted, it works no unfair surprise on Defendant to convict him for knowingly entering or remaining in that area.

Acknowledging the Court's prior holdings in reply, Defendant pivots to arguing that the Capitol Police "un"-designated Capitol grounds at some point during the insurrection. Defendant's argument lacks merit. If *anyone* can designate an area "restricted," Defendant insists, then *anyone else* can "un"-designate it as well. Based on this textual premise, Defendant maintains that individual Capitol Police officers "un"-designated various portions of the Capitol building and grounds by retreated from various lines, thereby "allowing" those lines to be breached. That

---

[4] Defendant also argues that section 1752(a)(2) is unconstitutionally vague because it criminalizes conduct "within such proximity to" a restricted area, not just "in" the restricted area. ECF No. 88 at 17-19. Whatever the merits of such an argument, the Government seeks to convict Defendant for being within a restricted area (the Capitol building and grounds), not being near it. *See* Aff. at 4.

argument, however, ultimately depends on how an area came to be restricted and whether there are factual circumstances supporting the legal argument that such restriction was removed. *See United States v. Bursey*, 416 F.3d 301, 307 (4th Cir. 2005). Because a Court may not assume facts outside of the charging document to resolve a Rule 12(b) motion, *Sunia*, 643 F. Supp. 2d at 60, Defendant's argument that Counts Two and Three should be dismissed because the Capitol building and grounds became *in fact* unrestricted fails. Alternatively, in the first instance, it was the mob that removed the barriers, not law enforcement.

### B. Ex Post Facto

Next, Defendant insists that reading section 1752 to apply to the conduct charged would effect an *ex post facto* law in violation of the Due Process Clause of the Fifth Amendment. Judicial interpretation of a criminal statute may not apply retroactively if the interpretation is "unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." *Bouie v. City of Columbia*, 378 U.S. 347, 354 (1964). Generally, to prevail on an *ex post facto* challenge, a defendant must show some break with precedent. *See, e.g.*, *Williams v. Filson*, 908 F.3d 546, 577 (9th Cir. 2018); *accord Griffin*, 549 F. Supp. 3d at 58. Here, Defendant has identified no precedent adopting his reading. Indeed, it is *Defendant's* reading of these statutes that appears to be novel. As the Court has concluded above, neither section 231 nor section 1752 are, for present purposes, susceptible of more than one meaning. The fact that Defendant "has allegedly violated a rarely charged statute," or that the Government has only recently applied the challenged provisions to conduct at the United States Capitol, "does not mean that the construction of the[se] statute[s] unfairly blindsided him." *See Griffin*, 549 F. Supp. 3d at 58; *see also Mostofsky*, 2021 WL 6049891 at *11. Accordingly, Defendant's *ex post facto* challenge fails.

8

## C. Multiplicity

Next, Defendant argues that each of these charges in the Indictment are multiplicative, i.e., that to be convicted of more than one of them would violate the Double Jeopardy Clause. The Court recently addressed this issue in *United States v. MacAndrew*, Crim. A. No. 21-730, 2022 WL 17983533 (D.D.C. Dec. 27, 2022), and shall repeat that analysis here.

A multiplicity challenge faces a particularly high bar. As the Supreme Court explains, a "single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also United States v. Ballenger*, Crim. A. No. 21-719 (JEB), 2022 WL 14807767, at *2 (D.D.C. Oct. 26, 2022).

To illustrate how each charge contains elements distinct from the others, consider the following chart of the offenses charged in the Superseding Information:

| Counts | Proscribed Conduct | Mental State Required | Additional Facts Required |
|---|---|---|---|
| 1. 18 U.S.C. § 1752(a)(1) | Entering or remaining without lawful authority | Knowingly | To do so in a "restricted building" or area, i.e., an area that is "posted, cordoned off, or otherwise restricted" and is (1) the White House grounds or buildings or Vice President's residence or grounds; (2) an area where a person protected by the Secret Service is or will be temporarily visiting; or (3) an area restricted in conjunction with an event designated as a special event of national |

| | | | significance[5] |
|---|---|---|---|
| 2. 18 U.S.C. § 1752(a)(2) | Engaging in disorderly or disruptive conduct | Knowingly, and with the specific intent to impede or disrupt Government business | To do so in or near a restricted building or area The conduct in fact impedes or disrupts Government business |
| 3. 40 U.S.C. § 5104(e)(2)(D) | Uttering loud, threatening, or abusive language, or engaging in disorderly or disruptive conduct | Willfully, knowingly, and with the specific intent to impede, disrupt, or disturb Congressional proceedings | To do so in any Capitol building or on Capitol grounds |
| 4. 40 U.S.C. § 5104(e)(2)(G) | Parading, demonstrating, or picketing | Willfully and knowingly | To do so in any Capitol building. |

The differences between these charges are myriad, but the Court will note a few. Only Count 4 criminalizes parading, demonstrating, or picketing, so it is distinct from the rest. *Accord Ballenger*, 2022 WL 14807767, at *2. Counts 3 and 4 are distinct from Counts 1 and 2 because they require a showing of willfulness. Counts 3 and 4 also differ from Counts 1 and 2 because the latter criminalize conduct in a Capitol building or area no matter whether it is also a "restricted area" when the prohibited conduct occurred. Count 2 is distinct from Count 1 because it requires a showing of specific intent where Count 1 does not, and because Count 2 criminalizes different conduct from Count 1. *Accord id.* As such, no one count in the Superseding Information is multiplicative of the other. Defendant's multiplicity challenge therefore fails.

### D. Venue

Defendant also moves pursuant to Federal Rule of Criminal Procedure 21(a) to transfer venue to the United States District Court for the Eastern District of Virginia or the United States District Court for the Eastern District of Oklahoma. In brief, Defendant insists that no fair jury

---

[5] 18 U.S.C. § 1752(c)(1).

can be impaneled in this District, and therefore to try him in this district would violate Defendant's rights under the Fifth and Sixth Amendments. Like every other court of this jurisdiction to confront this argument, the Court rejected it in *United States v. Eicher*, 2022 WL 1173926, at *7 (D.D.C. Oct. 20, 2022). *See also United States v. Oliveras*, Crim. A. No. 21-728 (BAH), 2023 WL 196679, at *3 (D.D.C. Jan. 17, 2023) (collecting cases). Rather than repeating that analysis here, it suffices to note that Defendant makes no effort to distinguish this case from these myriad others, despite the Court directing Defendant to do so in reply, which Defendant never filed and therefore did not address the issue. Accordingly, for the reasons stated in *Eicher*, incorporated in its entirety herein, the Court rejects Defendant's arguments in favor of transfer.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's [88] Motion to Dismiss Counts Two and Three of the Indictment, [89] Motion to Dismiss 2-5 as Multiplicitous, and [90] Motion to Transfer Venue are **DENIED**. Appropriate orders accompany this memorandum opinion.

Dated: February 6, 2023

                                                  /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge