**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-244 (CKK)** |
| **v.** | : | |
| | : | |
| **ANTHONY ALFRED GRIFFITH, SR.,** | : | |
| | : | |
| **Defendant.** | : | |

<u>**UNITED STATES'S RESPONSE TO DEFENDANT'S TRIAL BRIEF ON RELEVANCY**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant's Trial Brief on Relevance [ECF Dkt. 132].

*First*, as indicated in open Court and on the record, the Government has made diligent inquiries with the United States Capitol Police ("USCP") to determine whether a permit was approved for the "Donald, You're Fired March on DC" on January 6, 2021. Based on their review, USCP has determined that the "Donald You're Fired March on DC" was not permitted on Capitol grounds; the source of information concerning the march was a website and not an application to the USCP; and that neither the Metropolitan Police Department nor the National Park Service had received permit applications regarding that particular March.

*Second*, the Government provided to counsel and the Court the transcript for USCP Lieutenant Scott Grossi's testimony in *United States v. Daniel Dean Egtvedt*, 21-CR-177-CRC on Tuesday, December 6, 2022 (hereinafter, "Transcript"). In his testimony, Lieutenant Grossi stated that part of his job duties on January 6, 2021, involved signing off on demonstration permit endorsement sheets. Transcript 467. He explained that an individual or group that seeks permission for a First Amendment demonstration on the Capitol grounds must first submit an

1

application, and that once the application is complete, Lieutenant Grossi and his assistant commander would review the event file and send for additional review as appropriate. *Id.* at 468. He testified that he reviewed demonstration permits for locations on the Capitol grounds to be held on January 6, 2021. *Id.*  In particular, he testified:

Counsel:      Did you know of other groups that had obtained permits to demonstrate or exercise First Amendment free speech rights around the Capitol that day?

Lt. Grossi     Yes.

Counsel:      Were any inside the bicycle rack perimeter?

Lt. Grossi:    Do you have the bicycle rack perimeter?

Counsel:      I do.  I'm going to pull up Government's Exhibit 1.

Transcript 472-473.  Counsel then showed Lieutenant Grossi Government's Exhibit 1 (attached), which is identical to Government's Exhibit 102 in this case.  Counsel asked Lieutenant Grossi to circle on the map the location for "Grassy Area 8" using the Court's touchscreen.  Counsel asked Lieutenant Grossi to "show me some of the other places that permitted demonstrations were allowed on January 6th, and Lieutenant Grossi proceeded to mark approximately five additional areas.  Transcript 473 ("There was one that was further north. . . . There was another one here, here, here, and this area.").  While the Lieutenant's markings on Exhibit 1 are not evident from the transcript, context and the lack of any follow-up questions concerning *any* of those locations make plain that none of the locations identified and notated by Lieutenant Grossi were within the restricted perimeter.[1]  Counsel then asked, "Do you know if any of the organizations were allowed to demonstrate on the Capitol steps?"  Lieutenant Grossi's answer was clear and unequivocal: "No.

---

[1] Counsel in *United States v. Egtvedt* are the same attorneys representing defendant in this case, and thus have direct knowledge of the permitted locations chalk created by Lieutenant Grossi at their request while testifying in *Egtvedt.*

That's not allowed."  Transcript 473-474.  As this testimony—elicited at trial over *four months ago*—makes clear, none of the locations for permitted locations on January 6 were within the restricted area and demonstrations on the Capitol steps were categorically impermissible.

*Third*, the defendant provides no evidence to suggest that any demonstration in fact took place "at the steps of the United States Capitol" on January 6, 2021 at noon.  Defense counsel has access to extensive closed-circuit television footage showing the exterior of the United States Capitol building, including the period proximate to noon on January 6, 2021.  Review of such CCTV footage would definitively answer whether there was in fact a demonstration "at the steps" of the Capitol on January 6, but defendant offers no indication of having even looked.  His failure to do so speaks volumes.

*Fourth*, and most significantly, even if there were such a permit (and there is not), and even if there were a "Donald Trump, Your Fired March on DC" demonstration on the Capitol steps at noon on January 6 (and defendant offers no evidence that there was), defendant's motion still fails because the existence of a permitted demonstration at the Capitol steps on January 6 is irrelevant to the existence of the restricted perimeter for purposes of 18 U.S.C. § 1752.  That statute criminalizes the entry and presence within "any restricted building or grounds *without lawful authority* to do."  18 U.S.C. § 1752(a)(1).  The statutory language itself recognizes the existence of a distinction between those with and without lawful authority to enter into and/or remain within a restricted area.  The fact that people *authorized* to enter or remain within a restricted area do *in fact* enter or remain within that area has no impact on whether or not it remains restricted for others who lack any such authorization.

Here, defendant attempts to argue that the existence of a permit creating a group of people authorized to be at the Capitol steps on January 6 would somehow call into question the

applicability of the restricted area to him.  The claim is without merit.  Hundreds of people were within the restricted perimeter on January 6: members of Congress, their staff, and law enforcement officers.  They had lawful authority to be there.  Their presence within the perimeter has no bearing on the applicability of that perimeter to the others who lacked any such lawful authority to be there, like the defendant.  Likewise, while a member of a group that had successfully applied for and received a permit to conduct a demonstration at the Capitol steps would *ex hypothesi* be authorized to be present there, others (who were *not* members of that group, like the defendant) would remain without any lawful authority to enter or remain in the restricted area.  The mere fact that some people but not others may be authorized to be in a particular location in no way diminishes or renders nugatory the existence of a restricted area; indeed, the very purpose of establishing a restricted perimeter is to create an area that is off-limits to some individuals but not to others.  Whether or not a permit issued for a demonstration at the Capitol steps on January 6 is irrelevant to defendant's case, and his attempt to conduct an eleventh-hour fishing expedition should be denied.

//

//

//

//

//

//

//

//

## CONCLUSION

For the reasons set forth above, the defendant's motion should be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052


By:     /s/ Craig Estes
        CRAIG ESTES
        Assistant United States Attorney
        United States Attorney's Office for the District of
        Massachusetts (detailee)
        Massachusetts Bar No. 670370
        craig.estes@usdoj.gov
        (617) 748-3100


        /s/ Sonia Mittal
        SONIA MITTAL
        Assistant United States Attorney
        United States Attorney's Office for the
        District of Columbia
        Illinois Bar No. 6314706
        sonia.mittal@usdoj.gov
        (202) 821-9470