**From:** Kira West kiraan█████████
**Subject:** Re: United States v. Griffith
**Date:** March 15, 2023 at 9:47 PM
**To:** Mittal, Sonia (USADC)█████████████
**Cc:** Kollar-Kotelly Chambers ████████████████████████, Nicole cubbage████████████
Estes, Craig (USADC) ██████████████
**Bcc:** kiraannewe█████████



Good evening all,

In response, the defendant states the following:

First, Although the Court on its own brought that this motion to dismiss may be untimely under FRCP 12, the rule also states under (c)(3) that the Court can consider it for "good cause" shown. At the time this indictment was filed, it was not obvious that there was a defect in the indictment. Moreover, the defense had no idea what the government proof would be until the defense heard the government's case, so the defense could not have known from the face of the indictment alone that it was defective and therefore the Court should not expect that the defense would have raised this earlier. Moreover, the government has maintained that this is simply an "inartfully" drafted indictment and thus there is no defect in the indictment.

Second, as Judge Contreras pointed out in the Andries case, 21 CR 93(RC)(cited by the government this afternoon in court) the Vice President elect was in fact visiting the Capitol that day, before and after the the breach, but not during the breach. See ECF 47, fn. 12. It appears from the Court's reasoning that this defendant (although it's hard to tell from from the opinion) may have actually been at the Capitol during the time Vice President elect Harris was visiting. The Court further stated that he did not consider "the government claims regarding Vice President elect Harris's future presence or the presence of Vice President Pence's family." Id. at p. 33. Importantly this issue did not come up during trial, but long before trial. Finally, the defendant in the case pled guilty to the felony count and the 1752 counts were dismissed, so the issue is moot.

Third, the government cites another case US v. Ibrahim, 21 CR 496 (TJK) below and again in court this afternoon. Like the Andries case, this defect too was raised pretrial. Judge Kelly ruled for the government stating that "courts may, quote, drop from an indictment those allegations that are unnecessary to an offense that is already—that is clearly contained with it, close quote." Here he's quoting from Miller, 47` U.S. 130, 144 (1985). But again, this is not raised during trial but pretrial where the government can move to strike the offending language, which they did in this case. So again, distinguished from the case before this Court, the government moved to strike long before trial, and the Court granted the motion yet chided the government for not filing the motion to strike sooner. (Minute order 9/2/22). It the defense position that once the case goes to trial, the government is stuck with their indictment and here, the government has not proven what they have charged.

Finally, the government's reliance on Miller is misplaced. The Court in Miller held that "the variance complained of here added nothing new to the indictment..." Here, the variance in fact does add something new to the indictment. The 9th Circuit reasoned that a "conviction could not stand where the trial proof corresponded to a fraudulent scheme much narrower than...the scheme that that grand jury had alleged." Miller at 135. Here, we have the opposite issue. The grand jury indicted Mr. Griffith based on additional facts, not narrower ones. The Supreme Court held that "As long as the crime and the elements of the offense that sustain the conviction are fully and clearly set out in the indictment, the right to a grand jury is not normally violated by the fact that the indictment alleges more crimes or other means of committing the same crime." Id at 136. But in this case, the indictment does not allege more crimes or other means of committing the same crime. Here, the government added incorrect facts to the indictment, which is the 5th amendment violation. The grand jury heard facts that were incorrect when it indicted the case. And unlike Miller, there is no amendment of the indictment here. The Court in Miller in section IV of the case laid out when a 5th amendment does take place:

> The one decision of this Court that does offer some support to the Court of Appeals' result is *Ex parte Bain,* 121 U. S. 1 (1887), for there the Court treated as an unconstitutional "amendment" the deletion from an indictment of allegations that would not have been necessary to prove the offense. This deletion, in the Court's view, did constitute a compromise of the defendant's right to be tried only on a grand jury's indictment.
>
> Bain was a bank cashier who had been indicted for including false statements in a report required to be made to the Comptroller of the Currency. The indictment charged that, when Bain filed these required reports, he
>
> "did then and there well know and believe the said report and statement to be false to the extent and in the mode and manner above set forth; and [he] made said false statement and report in manner and form as above set forth with intent to deceive the Comptroller of the Currency and the agent appointed to examine the affairs of said [banking] association. . . ."

*Id.* at 121 U. S. 4. The relevant statute made it a criminal offense to file

Page 471 U. S. 141

"'any false entry in any book, report, or statement . . . with intent . . . to deceive . . . any agent appointed to examine the affairs of any such association. . . .'"

*Id.* at 121 U. S. 3 (quoting Rev.Stat. § 5209). Thus, under the terms of the statute, there was no need to charge Bain with intending to deceive "the Comptroller of the Currency." An intent to deceive the agent appointed to examine the reports was all that was necessary to prove the offense.

Under later cases, such as *Ford* and *Salinger,* the presence of such surplusage in the indictment would not invalidate a conviction as long as the necessary intent was also alleged and proved. But in *Bain,* the trial court sustained Bain's demurrer to the indictment. After sustaining the demurrer, however, the court granted a motion by the Government "that the indictment be amended by striking out the words *the Comptroller of the Currency and.*'" 121 U.S. at 121 U. S. 5. Bain was then required to plead to the amended indictment, and was tried and convicted under that indictment. *Ibid.* This Court granted a writ of habeas corpus on the ground that Bain's Fifth Amendment right to stand trial only on an indictment returned by a grand jury had been violated. The opinion reasoned that a court could not, consistent with the Fifth Amendment, assume that the narrower indictment would have been returned by the grand jury that returned the broader one. [Footnote 6]

Page 471 U. S. 142

*Bain* may best be understood in terms of two distinct propositions. Most generally, *Bain* stands for the proposition that a conviction cannot stand if based on an offense that is different from that alleged in the grand jury's indictment. But more specifically, *Bain* can support the proposition that the striking out of parts of an indictment invalidates the whole of the indictment, for a court cannot speculate as to whether the grand jury had meant for any remaining offense to stand independently, even if that remaining offense clearly was included in the original text. Under this latter proposition, the narrowing of an indictment is no different from the adding of a new allegation that had never been considered by the grand jury; both are treated as "amendments" that alter the nature of the offense charged. In evaluating the relevance of *Bain* to the instant case, it is necessary to examine these two aspects of *Bain* separately, for the Court has treated these two propositions quite differently in the years since *Bain*.

It's the position of the defense that what we have here is a Bain problem.
Respectfully submitted,
Kira Anne West and Nicole Ann Cubbage
Attorney for Anthony Griffith