**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **CASE NO. 21-cr-244 (CKK)** |
| **v.** | : | |
| | : | |
| **ANTHONY ALFRED GRIFFITH, SR.,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S**
**MOTION FOR RELEASE PENDING APPEAL**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes defendant Anthony Griffith's ("Griffith" and "the defendant") motion for release pending appeal ("Motion"). [ECF Dkt. 159]. Following a five-day bench trial, Griffith was convicted of each of the four misdemeanors in which he was charged related to his participation in the breach of the United States Capitol on January 6, 2021. On September 1, 2023, this Court sentenced Griffith to concurrent terms of 6 months' imprisonment on each of the four charges. On September 12, 2023, the defendant filed the instant motion for release pending appeal. For the reasons set forth below, including but not limited to Griffith's failure to show that his appeal "raises a substantial question of law or fact likely to result in" reversal or even a reduced sentence, Griffith's motion for release pending appeal is without merit and should be denied.

### I.    Background

A federal grand jury indicted the defendant and his apprentice co-defendant Jerry Ryals on March 24, 2021.  [ECF Dkt. 12]. Count Two of the indictment charged Griffith with entering and remaining in a restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(1); Count Three of the indictment charged Griffith with engaging in disorderly and disruptive conduct in a

restricted building or grounds, in violation of 18 U.S.C. § 1752(a)(2); Count Four charged Griffith with disorderly conduct in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(D); and Count Five charged Griffith with parading, demonstrating, or picketing in a Capitol building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Indictment [ECF Dkt. 12]. A five-day bench trial concluded on March 17, 2023.

On May 16, 2023, this Court issued its written findings of fact and conclusions of law, and found the defendant guilty of each of the four misdemeanor counts in which he had been charged. [ECF Dkt. 142].

On September 1, 2023, the Court sentenced Griffith to terms of 6 months imprisonment on each of those charges. *See* Minute Entry dated September 1, 2023. The Court ordered that each of those four terms of imprisonment were to run concurrent to one another. *Id.* The Court permitted Griffith to remain out on conditions of release and to voluntarily surrender to the Bureau of Prisons on a later date. *Id.* In his Motion, defendant represents that his report date is scheduled for September 29, 2023.

On September 12, 2023, the defendant filed the instant Motion and supporting memorandum ("Memorandum") seeking release during the pendency of his appeal. [ECF Dkt. 159 and 159-1]. The Court entered a minute order dated September 13, 2023, directing the United States government to respond to the defendant's Motion on or before September 20, 2023. *See* Minute Entry dated September 13, 2023.

## II.    Legal Standard

Once a defendant has been convicted and sentenced, he has no presumptive right to remain free on bail. Indeed, the Bail Reform Act of 1984 "creates a presumption against release pending

appeal." *United States v. Chilingirian.* 280 F.3d 704, 709 (6th Cir. 2002). By statute, the defendant "shall . . . be detained" unless the court makes a series of findings in his favor:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds-
>
> > (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c); and
> >
> > (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
> >
> > > (i) reversal,
> > >
> > > (ii) an order for a new trial,
> > >
> > > (iii) a sentence that does not include a term of imprisonment, or
> > >
> > > (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person . . . ."

18 U.S.C. § 3143(b)(1). The defendant bears the burden of satisfying these statutory elements. *See Morison v. United States*, 486 U.S. 1306, 1306–07, 108 S.Ct. 1837, 100 L.Ed.2d 594 (1988).

The D.C. Circuit has adopted a two-part inquiry to determine whether a defendant's appeal raises a substantial question of law or fact likely to result in any of the various forms of relief enumerated in § 3143(b)(1)(B)(i)-(iv): "(1) Does the appeal raise a substantial question? (2) If so, would the resolution of that question in the defendant's favor be likely to lead to reversal?" *United*

*States v. Perholtz*, 836 F.2d 554, 555 (D.C. Cir. 1987). "[A] substantial question is a 'close' question or one that very well could be decided the other way." *Id.* The standard is one that is "more demanding" than one that merely requires the issue to be "fairly debatable" or "not frivolous." *United States v. Libby*, 496 F. Supp. 2d 1, 4 (D.D.C. 2007). The *Perholtz* Court chose that standard, which it regarded as the "more demanding standard," as "it appears better to accord with the expressed congressional intent to increase the required showing on the part of the defendant" and in recognition that "[t]he law has shifted from a presumption of release to a presumption of valid conviction." 836 F.2d. at 555-556. Likewise, it is the defendant who "bears the burden of rebutting this presumption and 'demonstrat[ing] that he has a substantial question to present [upon appeal] before he may be admitted to bail.'" *Libby*, 498 F.Supp.2d at 3 (citing and quoting *United States v. Shoffner*, 791 F.2d 586, 589 (7th Cir. 1986)).

### III.      Argument

Griffith has not met his burden with respect to any of the requirements for release pending appeal, and his motion should be denied. First, as Griffith himself acknowledges, the issues he intends to raise on appeal are directed to only two of the four counts of conviction and have no bearing on Counts Four and Five. In other words, even if all of the questions raised in his motion with respect to Counts Two and Three were deemed to be "substantial" within the meaning of § 3143(b)(1)—and they are not—the resolution of those questions would not result in a reversal or reduction of Counts Four and Five, for which Griffith was also sentenced to 6 months of prison. Because Griffith's motion does not argue that substantial questions of law or fact exist with respect to Counts Four and Five (and the concurrent six-month sentences resulting from those counts), it is unnecessary to consider whether he meets any of the other requirements.

Griffith fails to meet his burden with respect to those additional requirements in any event. For reasons set forth in greater detail below, none of the questions defendant raised in his motion are "substantial" or "close" questions that could have been decided "the other way," and are therefore not likely to lead to reversal or a reduced sentence. Moreover, Griffith's motion does not demonstrate by clear and convincing evidence that he is not likely to flee or pose a risk to others, nor that his as-yet-unfiled appeal is not for the purposes of delay. His motion should be denied.

A. Griffith's Questions Will Not Impact Griffith's Sentences on Counts Four and Five, For Which He Was Sentenced to Concurrent Terms of Imprisonment.

Griffith claims that if he were to prevail on one or more of the questions he raises in his motion, "his convictions for Counts 2 and 3 would be reversed [and h]e would then only have the remaining Counts 4 and 5 for which he received the statutory maximum of 6 months incarceration." Memorandum 12. Accordingly, Griffith cannot meet his burden for release pending appeal pursuant to § 3143(b)(1)(B) because even if he were to prevail in the Court of Appeals on the issues enumerated in his Motion, he would still be subject to two concurrent terms of imprisonment—both of which are equal to the entire term of imprisonment currently imposed. Win or lose his appeal regarding Counts Two and Three, there will be no impact on Counts Four or Five and his sentence will be unchanged.

Where, as here, a defendant has been sentenced to prison terms on multiple counts of conviction, he "cannot be released unless the appeal raises a substantial question likely to result in reversal on *all* counts on which imprisonment is imposed." *Perholtz*, 836 F.2d at 557 (emphasis added); *see also United States v. Dale*, 223 F.2d 181, 183 (7th Cir. 1955) ("As the sentences imposed [were] to run concurrently the burden was upon petitioner to show error as to each count."); *United States v. Bayko*, 774 F.2d 516, 522 (1st Cir. 1985) ("All agree that the provision breaks down into two distinct requirements: (1) that the appeal raise a substantial question of law

5

or fact and (2) that if that substantial question is determined favorable to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed."); *United States v. Green*, 1998 WL 796118 at *1 (10th Cir. Nov. 17, 1998) (denying defendant's release pending appeal where he failed to show "his motion would result either in a reversal of all of his convictions or in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process."); *United States v. Goldman*, 1993 WL 48906 at *4 (N.D.N.Y. Feb. 24, 1993") ("In cases where a substantial issue of law exists with regard to only a portion of the conviction, the court is not permitted to grant bail pending appeal."). Where a defendant is convicted of more than one count, the substantial question (or questions) must relate to each of the other counts of conviction in order to be eligible for release. *Morrison v. United States*, 486 U.S. 1306 (1988) (Rehnquist, J., in chambers).

Here, Griffith was convicted on each of the four counts of the Indictment in which he was charged. This Court imposed six-month concurrent sentences for each of those four counts of conviction. As Griffith concedes, the questions he raised in his motion pertain to Counts Two and Three. Memorandum 12. Since he was also sentenced to concurrent terms of incarceration on Counts Four and Five, Griffith cannot meet his burden of demonstrating that his claims are likely to result in reversal, an order for a new trial, a sentence that does not include imprisonment, or a reduced sentence on each of the counts of conviction. Accordingly, his motion must be denied.

Griffith attempts to evade this inevitable result by claiming that if his convictions on Counts Two and Three were reversed or vacated, he would therefore be resentenced on Counts Four and Five. Memorandum 12. Griffith offers no support for his claim, which is without merit and counter to the caselaw referenced above. Here, the Court explicitly sentenced Griffith to six

months of incarceration on Counts Four and Five; if Counts Two and Three were vacated, the Court-imposed sentences of six months of incarceration on Counts Four and Five would remain. Indeed, the Court specifically made an alternative finding at sentencing that it would have imposed the same sentence on Griffith pursuant to the § 3553(a) factors independent of any rulings on sentencing guidelines issues. Because Griffith's appeal will not in any event result in a reversal or reduced sentence for Counts Four or Five, he cannot meet his burden for release pending appeal pursuant to § 3143(b)(1)(B). His motion for release pending appeal should be denied.

     B.  <u>Griffith's Claims Fail to Raise Substantial Questions of Law or Fact Likely to Result in Reversal or a Reduced Sentence with Respect to Counts Two and Three.</u>

Griffith's failure to address the concurrent sentences imposed for his convictions on Counts Four and Five make it unnecessary to consider whether Griffith has raised a substantial question with respect to Counts Two and Three. However, Griffith has not in any event met his burden to show that any of the issues he seeks to raise with respect to Counts Two and Three articulate a "substantial question," let alone one that is likely to result in reversal, a new trial, or a reduced sentence. His motion should be denied.

     1.  The Denial of Griffith's Motion to Admit Evidence Concerning a USCP Operational Plan Does Not Raise a Substantial Question Likely to Result in Reversal.

Griffith first represents that he will appeal this Court's "denial of his motion to admit evidence of the Capitol Police Operational Plan dated January 5, 2021." That question, however, does not give rise to a "substantial question" likely to result in reversal because this Court in fact *allowed* the defendant's motion, and so no appeal of that Order will result in a more favorable disposition for the defendant. In his motion dated March 14, 2023, the defendant sought "to call witnesses to testify about the creation and implementation of this Ops Plan in his case in chief." ECF Dkt. 132 at 2. The Government filed its opposition the next day. ECF Dkt. 133. The Court

then issued its Order allowing defendant's motion *in limine* to admit testimony concerning the January 5, 2021 Operation Plan and the restrictions on public access to the U.S. Capitol grounds. ECF Dkt. 135. As this Court explained in that Order, the defendant "has identified a Capitol Police 'operational plan' dated January 5, 2021, that appears to list a demonstration permitted to occur on the Capitol steps on January 6, 2021. Defense counsel has focused on this one alleged permit. If this demonstration was authorized and occurred, Defendant argues, then at least one area Defendant allegedly entered could not have been restricted for the purposes of the charged subsections." *Id.* Where, as here, the Court allowed defendant's motion and granted him the relief sought, the defendant cannot meet his burden to show his appeal of the Court's Order gives rise to "substantial question" on appeal likely to result in reversal or a new trial.

Furthermore, after the Court's Order, Griffith called U.S. Capitol Police Department employees as witnesses at trial. The defendant, through counsel, had a fulsome opportunity to question those witnesses about whether any permit authorizing a demonstration on the Capitol steps for January 6, 2021, had in fact been issued. Neither witness had any knowledge of any such permit, or of any authorized and permitted demonstration on the Capitol steps on January 6, 2021.[1] The testimony of those witnesses did not support defendant's claim but his disappointment with

---

[1] Griffith additionally subpoenaed yet another U.S. Capitol Police Department employee who appeared at Court and stood ready to testify. Griffith's attorneys had previously called that same witness in an earlier trial involving a January 6 defendant (*United States v. Daniel Dean Egtvedt*, 21-CR-177-CRC). On that occasion, when counsel asked the witness, "Do you know if any of the organizations were allowed to demonstrate on the Capitol steps," the witness answered, "No. That's not allowed." *See* ECF Dkt. 133 2-3. Despite his appearance at Court in response to defendant's subpoena at Griffith's trial, counsel elected not to call that witness to testify again.

their testimony does not create a cognizable basis for an appeal, let alone give rise to a "substantial question" that is likely to result in reversal.

Defendant also claims that "the Court restricted Defendant to questions on a narrow aspect of relevant *Brady* evidence rather than allowing Defendant to question Capitol Police witnesses about the Operational Plan and its significance to the alleged 'restricted' areas." The defendant is mistaken. Contrary to the defendant's unsupported contention, and as set forth in the Court's Order, he was entitled "to call a United States Capitol Police employee to testify as to the number of permits granted for public demonstration on Capitol grounds on January 6, 2021, the nature of those permits, and whether the events permitted ever occurred." ECF Dkt. 135. As explained above, the defendant did in fact called such witnesses at trial and asked about their knowledge concerning the Operational Plan and any permits authorizing demonstrations on the Capitol steps within the restricted area around the U.S. Capitol on January 6, 2021. Griffith does not point to a single instance in which he was precluded from asking a witness about the Operational Plan or permits. His failure to do so further demonstrates his inability to meet his burden to show a "substantial question" that warrants relief under § 3143(b)(1).

The defendant next claims—for the first time—that he sought to introduce the Operational Plan into evidence for the limited purpose of showing "notice and states of mind (regardless of the truth of the matters asserted therein)" and thus was not required to satisfy any of exceptions to the rule against hearsay. Memorandum 6-7. Once again, defendant's claim falls short of the mark. Griffith fails to provide a single citation to the record to support his claim that he sought to introduce the Operational Plan for something other than the truth of its contents. Moreover, given that Griffith sought to introduce the Operational Plan as support for his (mistaken) claim that a permit authorizing a demonstration on the Capitol steps had issued for January 6, offering the

contents of the Plan for something other than its truth would serve no purpose. This claim too fails to meet Griffith's burden of demonstrating the existence of a "substantial question."

Griffith further contends that the map attached to the Operational Plan "show[ed] a different restricted perimeter than the one presented by [a] government witness" and that the Court's various ruling precluded him from exploring "the differences between the two maps." Memorandum 7. The claim is without merit. The map attached to the Operational Plan *was* admitted into evidence at trial, a fact that Griffith inexplicably fails to acknowledge. Trial Transcript 604-605. Once the map was admitted into evidence, he could have asked witnesses about any alleged differences between that maps but evidently elected not to do so. Indeed, the defendant fails to point to a single instance in the record where he sought to ask any witness to compare the two maps and was precluded from doing so. This contention falls short of meeting Griffith's burden to show a "substantial question."

Griffith's reliance on the Operational Plan as a basis for § 3143(b)(1) relief fails two additional reasons. First, Griffith insists that introduction of the Operational Plan would have allowed him to contest the restricted area map pictured in Government Exhibit 102 and to impeach government witnesses who testified regarding that map. The defendant, however, ignores the fact he *stipulated* to the parameters and location of the restricted area perimeter shown in Government Exhibit 102 and to the fact that the restricted area was closed to members of the public on January 6. In the Stipulation of the Parties signed by Griffith's counsel and admitted into evidence as Government Exhibit 15 without objection, Griffith agreed that:

> [o]n January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public. *See* Map Outline Restricted Area on January 6, 2021, contained in Government Exhibit 102. These security barriers included bike racks that were position to the north of the U.S. Capitol along Constitution Avenue; to the south of the U.S. Capitol along Independence Avenue; to the west of the U.S.

> Capitol along First Street on the eastern side of that street; and, on the east side of the U.S. Capitol, between the Capitol Plaza (East Front) and the grassy areas located between the Plaza and First Street. . . . the Restricted Area described above and depicted in Government Exhibit 102 was a posted, cordoned off, or otherwise restricted area where the Vice President and members of his immediate family were and would be temporarily visiting.

Stipulation of the Parties (Government Exhibit 15; ECF Dkt. 127) 4-5. Griffith's claim that admission of the Operational Plan would have allowed him to contest stipulated facts and give rise to a "substantial question" is simply wrong.

Second, even if the Operational Plan supported Griffith's claim that the restricted area around the grounds of the U.S. Capitol building differed in a material way from the restricted area depicted in Government Exhibit 102 and stipulated to by the parties in Government Exhibit 15 (and it does not), exclusion of the Operational Plan would still fail to raise a "substantial question" with respect to Griffith's convictions pursuant to 18 U.S.C. § 1752(a)(1) and (a)(2) because Griffith did not stop when he entered onto the U.S. Capitol grounds but rather entered—twice—into U.S. Capitol building. Griffith's entry into the Capitol building constitutes an independent basis for his convictions pursuant to 18 U.S.C. § 1752, regardless of the precise parameters of the restricted area around the Capitol grounds in effect on January 6, 2021. Griffith's claims regarding the Operational Plan do not raise a "substantial question" and would not result in a reversal or reduction in sentence.

2. Denial of Griffith's Motion to Dismiss Does Not Raise a Substantial Question Likely to Result in Reversal.

Griffith next represents that he will seek to appeal the Court's denial of his motion to dismiss Counts Two and Three of the Indictment. Memorandum 9-10; *see* ECF Dkt. 136, 137, and 140. In particular, the defendant contends that because the Indictment language for the two 18 U.S.C. § 1752 charges (Counts Two and Three) allege "the Vice President *and* Vice President-

11

elect were temporarily visiting," ECF Dkt. 12 at 2 (emphasis added), rather than the Vice President *or* the Vice President-elect were temporarily visiting, then "both were required . . . to support conviction." Memorandum 10.

The claim is meritless and contrary to well-settled law. "[A]s the Supreme Court has repeatedly held, the government is entitled to prove criminal acts in the disjunctive, notwithstanding that the indictment charges them in the conjunctive." *United States v. Coughlin*, 610 F.3d 89, 106-07 (D.C. Cir. 2010) (citing *Griffin v. United States,* 502 U.S. 46, 56–60, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991); *Turner v. United States,* 396 U.S. 398, 420-21, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970) ("[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged."). Here, the indictment advanced two factual grounds in support of demonstrating that the U.S. Capitol building and grounds were restricted within the meaning of 18 U.S.C. § 1752(a): the presence of then-Vice President Pence and the presence of then-Vice President-Elect Harris. The parties stipulated to then-Vice President Pence's presence at the Capitol on January 6. *See* Stipulation of the Parties, ECF Dkt. 127 at 5 (the Capitol building and grounds were a "posted, cordoned off, or otherwise restricted area where the Vice President and members of his immediate family were and would be temporarily visiting."). That stipulation alone satisfied the government's burden as to that element, and where the government relied upon a sufficient but narrower set of facts to establish the requisite elements there is no due process issue. *See* ECF Dkt. 140 (citing and quoting *Coughlin*, 610 F.3d at 105). The defendant has failed to carry his burden to show that his challenge to the Court's denial of his motion to suppress gives rise to a "substantial question."

3. Griffith's Allegation that the Court's Finding of Facts Were Based on Information That Was Not Admitted in Evidence Does Not Raise a Substantial Question Likely to Result in Reversal.

Finally, defendant represents that he will seek to appeal the Court's findings of fact on the grounds that some of them resulted "from information not admitted in evidence in Defendant's case." Memorandum at 10-11. In support of this claim, Griffith complains that unspecified "portions" of the Court's Findings of Facts and Conclusions of Law, ECF Dkt. 142 ("Court's Findings") track unspecified factual findings from other cases and lists in a footnote a number of statements from the Court's Findings that he claims are not supported by evidence that was admitted in his case. As demonstrated below, however, each of the statements challenged by Griffith is supported by ample evidence in the trial record.

To start, Griffith misleadingly claims that the Court's Findings include the "finding [that] Defendant *shouted* 'Open the door' . . . [based on] video exhibit Gov. Ex. 403 with no audio." Memorandum 11 n.3 (emphasis added). In fact, the Court's Findings state, "At approximately 2:38 PM, and contrary to Defendant's testimony, Defendant can be *seen* shouting at a police officer inside the window, 'Open the door.'" ECF Dkt. 142, citing Gov. Ex. 403 (emphasis added). Government Exhibit 403 is surveillance video from the Capitol; while it has no audio, the video clearly shows Griffith shouting "Open the door" at officers guarding the building. The video provides a sufficient evidentiary basis in the record for the Court's actual factual finding.

Griffith's other examples fare no better. He claims that there is no evidentiary support for "piercing alarms" inside the Capitol building, but in Government Exhibits 316, 505, and 507 (among others), such alarms are clearly audible. Griffith claims that there is no evidence to show that he stepped over broken furniture "directly in front of him" after entering the Capitol building through the Senate Wing Door, but Government Exhibit 507 shows him confronting a pile of

broken furniture directly in front of him in the room he accessed through the Senate Wing Door. Likewise, Griffith claims that there was no evidence that he saw officers deploying chemical spray against rioters, but Special Agent Pratt testified at trial that Griffith told her and her fellow agent during an interview that he had observed Capitol police in the area of the Capitol building firing tear gas, pepper spray, and percussive rounds into the crowd. Trial Transcript 324-325. Finally, Griffith contends that there is no evidence that he saw and stepped over broken glass, but Government Exhibit 404 shows that he (and several other rioters) saw and stepped over broken glass on the floor just outside the door to the Parliamentarian's office.

Contrary to defendant's assertions, there is a sufficient evidentiary basis for each of the Court's Findings challenged by the defendant in his motion for relief pursuant to § 3143(b)(1). Accordingly, Griffith has not met his burden to show that his claims of insufficient evidence will raise a "substantial question" likely to result in reversal or reduced sentence. His motion to for release pending appeal should be denied.

C.   Griffith Has Not Demonstrated that He Is Not a Flight Risk or Danger to the Community.

In addition to demonstrating that his appeal raises a substantial question that will likely lead to reversal or a reduced sentence on all counts of conviction, the defendant must also demonstrate to the Court "by clear and convincing evidence" that he is neither a flight risk nor a danger to the community. "The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant." Fed. R. Crim. P. 46(c). Other than claiming in conclusory terms that because he was released on conditions after he was charged "[t]here is no flight or safety risk here," Memorandum 5, Griffith makes no effort meet that burden here. That is insufficient.

Now that Griffith has been convicted and sentenced, rather than merely charged with crimes, the incentive to flee or engage in dangerous conduct has grown. That concern is particularly salient here where Griffith refuses to accept that he did anything wrong on January 6, and insisted in his testimony that despite the consequences, "it was worth it." Likewise, while the Court chose not to apply a guidelines enhancement for perjury, the Court's Findings make clear that defendant's testimony was self-contradictory and not credible. Court Findings 8-9. Defendant's lack of candor to the Court while on the stand and under oath raise additional concerns about Griffith's willingness to comply with Court orders and conditions. Likewise, as the Court observed at sentencing, Griffith failed to provide releases to the U.S. Probation Department request to verify his physical condition (PSR ¶60), his employment records (PSR ¶69), his financial information (PSR ¶¶72-73; 75), and his tax returns (PSR ¶78). His noncompliance in advance of sentencing is troubling. Moreover, and notwithstanding defendant's failure to provide verification of his assets and cashflow, it is evident that he has significant wealth that could enable and facilitate flight. Defendant has failed to meet his burden.

> D.  <u>Griffith Has Failed to Demonstrate that His Appeal Is Not for Purposes of Delay.</u>

Finally, the court must find that the defendant has not filed his appeal for the purpose of delay. Again, the defendant bears the burden of proof on this issue and again, defendant offers no meaningful argument to meet that burden. *United States v. Nacchio*, 608 F.Supp.2d 1237, 1242 (D. Colo. 2009)(defendant "offers neither an affirmative statement that the appeal is not interposed for purpose of delay, nor any meaningful argument."). As demonstrated above, none of the issues defendant suggests he will raise on appeal come close to presenting a "substantial question" that is likely to lead to a reversal or reduced sentence. Rather, defendant's claims rely on appealing motions that this Court decided in his favor, ignoring binding case law, and disregarding evidence

that contained in the trial record. Moreover, defendant's motion failed to raise issues that would impact the concurrent terms of incarceration resulting from Counts Four and Five; any attempt to raise such an issue now would only further serve to demonstrate defendant's dilatory intent. Defendant has failed to meet his burden to show that this motion is not for purposes of delay.

## IV.    Conclusion

For the foregoing reasons, the Government respectfully requests defendant's motion for release pending appeal be denied.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:    /s/ Craig Estes
CRAIG ESTES
Assistant United States Attorney
United States Attorney's Office
Massachusetts Bar No. 670370
craig.estes@usdoj.gov
(617) 748-3100

/s/ Sonia Mittal
SONIA MITTAL
Assistant United States Attorney
United States Attorney's Office for the
District of Columbia
Illinois Bar No. 6314706
sonia.mittal@usdoj.gov
(202) 821-9470

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Craig E. Estes
CRAIG E. ESTES
Assistant U.S. Attorney

Dated: September 20, 2023